## Marshall Spinning Company, Appellant, *v.* Travelers Fire Insurance Company.

Argued November 25, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Arthur S. Arnold,* with him *Horace Michener Schell,* for appellant.

*Richardson Dilworth* and *Evans, Bayard & Frick,* for appellee, were not heard.

OPINION BY MR. JUSTICE STERN, January 11, 1937:

Walter Marshall leased from Cleveland Worsted Mills Company part of a building in Camden, N. J., together with certain machinery. The lease provided that he should maintain the demised premises and machinery in good condition, and keep the machinery insured in the sum of $20,000, with loss payable to lessor. He was given an option to purchase the machinery for $17,719, which was far below its actual value. Subsequently the lease was assigned by Marshall to plaintiff corporation.

Plaintiff took out several policies of insurance. One was with Franklin Fire Insurance Company for $20,000 on the demised premises and machinery; the beneficiary was Cleveland Worsted Mills Company, but the premiums were paid by plaintiff in pursuance of the obligation in the lease. Another was with defendant for $50,000, the beneficiary being plaintiff company and the coverage the loss of use and occupancy of the de-

mised premises and the machinery.[1] The one on which the present action is founded was for $100,000, with plaintiff as beneficiary, covering all the machinery in the demised premises, including both that owned by plaintiff and that on which it held the option to purchase. As to the latter the policy stated:

"It is hereby understood and agreed that a portion of the machinery insured under this policy is not now owned outright by this assured; the assured having an option to purchase same under lease agreement at a definite price fixed in lease dated November 25, 1931, payment to be made at any time within three years thereafter.

"The intent of this insurance with respect to machinery being purchased under lease agreement as set forth above is to indemnify the insured for loss which would be sustained if said machinery were damaged or destroyed by fire or lightning; said loss being the difference between the replacement cost less proper deduction for depreciation on the date of loss or damage, and the purchase price named in the aforedescribed lease agreement."

A fire occurred which damaged the machinery. On the use and occupancy policies defendant and its co-insurer paid a certain sum to plaintiff in satisfaction of their obligations thereunder. On the $20,000 policy Franklin Fire Insurance Company paid to Cleveland Worsted Mills Company the amount necessary to recondition the leased machinery, which was thereupon repaired.[2] On the $100,000 policy defendant paid to plaintiff the amount of damage to the machinery owned by

---

[1] A policy of equal amount and with the same coverage was also obtained from New Jersey Fire Insurance Company.

[2] This appears in defendant's petition to open a judgment by default which had been entered by plaintiff in earlier proceedings in the case, the averment being tacitly admitted in plaintiff's answer to that petition. The fact is immaterial, however, to the present decision.

plaintiff, but the present suit is to recover on that policy for loss in connection with the machinery on which plaintiff held the option to purchase, the actual damage to which was $9,553.62. Plaintiff claims to be entitled to the difference between the value of this machinery immediately prior to the fire, $40,312.21, and the option price, $17,719, or a sum of approximately $23,000. Defendant denies any liability whatever under the policy as far as the leased machinery is concerned. The learned trial judge, who by agreement of the parties heard the case without a jury, rendered judgment for defendant.

The record indicates that there is no dispute between the parties as to what the policy was *intended* by them to cover. By the other policies plaintiff had insured against loss of use and occupancy of the machinery, and also against its actual damage or destruction to the extent of the interest therein of Cleveland Worsted Mills Company. But plaintiff had the optional right to buy machinery of a value exceeding $40,000 for $17,719, giving it an "equity" arising from such option which it sought to cover by fire insurance. Both parties thoroughly understood the circumstances, and the sole design of the policy in suit (so far as it applied to the leased machinery) was to meet this situation.[3]

The only difficulty in the case arises from the somewhat unhappy phraseology of the policy in stating that it was to indemnify the insured for loss which would be sustained "if said machinery were damaged or destroyed by fire," and that *"said loss"* was the difference between the sound value at the time of loss and the option price. Plaintiff seizes upon this language to buttress a contention that whether the machinery were

---

[3] That this is conceded by plaintiff is shown by its eighth request for conclusions of law, in which the court was asked to find that "the intent of the parties was *to insure the loss of the equity,* being the difference between the sound value of the property and the amount at which it could be purchased under the terms of the lease agreement." (Italics supplied.)

"destroyed" or whether it were merely "damaged" to any extent whatever, the *measure* or *amount* of the "loss" was fixed at the difference of approximately $23,000 between the sound value and the price at which plaintiff had the right to purchase. When the policy speaks of "said loss," however, it obviously means the loss which the policy was intended to cover; that is to say, it is defining, not an agreed amount payable in case of any loss, but the loss *insured against*,—in other words, the subject of the coverage. It does not mean that whatever damage occurred, however slight, the loss payable under the policy would be the entire amount of plaintiff's equity, but that the loss for which the policy was to indemnify the insured was the loss, if any, to that equity, such equity consisting of "the difference between the replacement cost . . . and the purchase price. . . ." Until and unless that equity was impaired by destruction or damage of the machinery to an extent in excess of $17,719 there would be no loss payable. In the present case the damage was less than the option price, and therefore never came within the ambit of plaintiff's equity which was insured under the policy. Nor can plaintiff recover the actual $9,553.62 of damage, because the language in regard to the leased machinery superseded that of the general coverage and expressly indicates that in the case of the leased machinery, as distinguished from the machinery owned outright by plaintiff, the coverage is confined to plaintiff's equity or interest and does not extend to a damage short of the minimum value at which that equity began. Any other construction would accomplish a result out of accord with what, as already stated, plaintiff admits to have been the intention of the parties.

Because of the conclusion thus reached it is unnecessary to discuss other points which were the subject of argument. For example, it is immaterial whether or not plaintiff could have compelled Cleveland Worsted Mills Company to repair the machinery out of the pro-

ceeds of the $20,000 policy, or whether such repair was in fact made. The vital point is that plaintiff suffered no loss covered by the policy. The judgment is therefore affirmed.